IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,                OPINION & ORDER

v.

                                                  12-cr-155-wmc

MELVIN THOMAS,

                Defendant.

---

    For the reasons set forth in detail below, the court will adopt Magistrate Judge Stephen Crocker's Report and Recommendation ("R&R") to deny defendant Melvin Thomas's long-pending motion to suppress.

## PROCEDURAL BACKGROUND

    Defendant Melvin Thomas is charged with: one count of conspiracy to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846; and two counts of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). (Indictment (dkt. #1).) In January of 2014, Thomas filed an eighteen-page motion seeking to suppress all physical evidence and statements obtained as a result of his allegedly illegal arrest following a traffic stop and warrantless search of his home.[1] (Dkt. #50.) Thomas's motion also challenged the issuance of a warrant authorizing a search of a 1996 Cadillac as unsupported by a showing of probable cause.

    On March 18, 2014, Judge Crocker held a hearing to take evidence on the question of whether the arrest was invalid, having determined that no hearing was necessary on the

---

[1] The motion to suppress contained both a recitation of the facts and several sections of argument. (*See* dkt. #50.)

other suppression requests.  (*See* Tr. (dkt. #63) 85:16-86:9.)  Judge Crocker also set a post-hearing briefing schedule.  (*Id*. at 79:10-80:25.)  Those briefs were never filed, however, as the suppression motion then faded into the background, and Thomas's vociferous dissatisfaction with a series of appointed counsel came to the fore.  On April 2, the court held an *ex parte* hearing with Thomas and his then counsel, Anthony Delyea, to determine the status of their attorney-client relationship.[2]  While Attorney Delyea did not withdraw at that time, the conversation spurred an ultimately fruitless foray into the unrelated issue of alleged "parallel construction" by the Drug Enforcement Agency.  (*See* dkt. ##71-75.)

Before that issue gained much traction, however, yet another breakdown in the attorney-client relationship occurred, and Attorney Delyea received permission to withdraw on June 18.  (Dkt. #82.)  The court appointed Thomas's fourth attorney, who did not further brief the pending suppression motion, but did file, and then withdraw, a separate suppression motion premised on the use of a GPS tracking device.  (*See* dkt. ##98, 107.)  On October 16, that attorney, too, withdrew from the representation.  (Dkt. #115.)  After repeatedly warning Thomas that the supply of counsel was not unlimited, Judge Crocker finally found that Thomas's failure to work with his appointed attorneys had effectively waived his right to counsel.  The court then gave Thomas until November 13 to file any additional briefing he wished on the pending pretrial motions, including the languishing January 2014 suppression motion.  (*Id.*)

Instead of receiving a supplementary brief from *Thomas* on the suppression motion, however, the court received a brief in opposition from the government on October 23,

---

[2] Attorney Delyea was actually Thomas's third court-appointed counsel. (*See* dkt. #15 (withdrawal of first appointed attorney and appointment of a second); dkt. #29 (discharge of second attorney and appointment of third court-appointed counsel).)

which responded directly to the arguments raised in the January 2014 motion itself. (Dkt. #117.) In contrast, Thomas ultimately chose not to file any additional briefing on that motion, requesting instead: (1) a postponement of the briefing deadlines; and (2) an evidentiary hearing on both the withdrawn GPS motion and the other suppression requests for which Judge Crocker had already found no hearing was necessary back in March. (Dkt. #123.)

On January 5, 2015, Judge Crocker denied Thomas's requests for further delay (dkt. #130), issuing his R&R on the pending motion to suppress (dkt. #129). In the R&R, Judge Crocker rejected all of Thomas's arguments for suppression, finding that: (1) the government had not improperly used Thomas's probation officer as a "stalking horse" to acquire evidence against him; (2) an incriminating phone call made from the jail was legally attenuated from Thomas's arrest; (3) the search of Thomas's residence was proper; and (4) the search of the Cadillac was proper. The parties were given until January 20 to interpose objections to the R&R.

On January 15, the court received a letter from Thomas asking for a fifth appointed counsel and requesting more time to respond to the R&R. (Letter (dkt. #137) 1-2.) Immediately after that request, Thomas also devoted more than ten pages to identifying what he termed "incorrect information in the report" and objecting to Judge Crocker's factual findings and legal conclusions. (*See id*. at 6-23.) Shortly thereafter, the court appointed yet another attorney for Thomas following an *ex parte* hearing held on January 22 and allowed that counsel to supplement Thomas's objections no later than Monday, January 26, if he chose to do so. (Dkt. #153.) No additional objections were filed. Accordingly,

the court proceeds to consider Judge Crocker's R&R in light of the objections in Thomas's January 15 letter.

FACTS

Judge Crocker's R&R contains a detailed recitation of the operative facts in this matter, which will not be repeated here. The following is a brief overview of those facts, which the court adopts in full,[3] with one exception noted in footnote 3 below.

On December 10, 2010, at about 12:28 a.m., Trooper Jonathan Fenrick of the Wisconsin State Patrol received a radio report of a vehicle northbound on Stoughton Road with its headlamps turned off. Trooper Fenrick performed a traffic stop of the vehicle, a gray Dodge minivan. Porcha Bell was driving, and Thomas was a passenger. Bell gave a false name; Thomas provided his correct name. Trooper Fenrick ran a computer search on both and found no arrest warrants for Thomas.

As it happens, Thomas was the subject of an ongoing drug task force investigation at that time.[4] Two MPD officers were directed to respond to the scene and arrived during the stop, followed by an MPD officer with a drug-detecting dog. Some time later, MPD Detective Dorothy Rietzler, the leader of the task force investigation, also arrived at the scene. Detective Rietzler knew that Thomas had previously asked women to accompany him to Chicago to pick up heroin and body-smuggle it, making the circumstances consistent

---

[3] Judge Crocker found that there was no GPS device on the minivan, but the United States and Thomas appear to agree that the GPS was, in fact, on the minivan. Since the court agrees with Judge Crocker that any Fourth Amendment issues regarding the GPS device are not part of the pending suppression motion, this fact does not change the court's analysis.

[4] While Thomas continues to imply that the traffic stop was part of a scheme orchestrated by the drug task force to start building an indictment against him, Judge Crocker found that Trooper Fenrick knew nothing about Thomas being the subject of an ongoing drug task force investigation at that time. (R&R, at 6.) Thomas offers no evidence to undermine that finding of fact.

with Thomas's M.O.  MPD Officer Terrance Loos also knew Thomas from previous law enforcement contact and was aware he used the alias "Thompson."

After the dog alerted to the odor of controlled substances, Officer Loos asked Thomas to step out of the vehicle, patted him down, handcuffed him and placed him in the backseat of the squad car.  At that point, Officer Loos ran a computer check on Thomas and determined that there was an active arrest warrant for him issued by the Wisconsin Department of Corrections, which was then supervising him as part of a state sentence.  After double-checking the warrant with the Dane County Dispatch Center, Officer Loos formally arrested Thomas and took him to the Dane County Jail, which independently confirmed the existence of the warrant for Thomas/Thompson.

Thomas's state probation officer at the time, Sue Tomaszewski, does not recall issuing the warrant, nor does her file contain any documentation showing who issued the warrant or why.  Detective Rietzler testified at the evidentiary hearing that to her knowledge, no one associated with the drug task force had any input in getting the after-hours warrant filed.

Detective Rietzler remained on-scene to interview Porcha Bell.  At about 1:20 a.m., Bell confirmed she was body-smuggling heroin for Thomas.  She was taken to jail and retrieved the heroin at about 2:24 a.m.

At about 4:16 a.m., Detective Rietzler and DEA Special Agent Jerry Becka visited Thomas's residence, which he shared with Anita Andrews.  Ultimately, Andrews gave verbal consent for them to search the residence.  In common areas within the residence, the officers discovered a digital scale, cutting agents, and baggies with the corners cut off, all indicia of drug trafficking.

About 7:20 a.m., Detective Rietzler and Agent Becka visited Thomas and attempted to interview him. After Thomas invoked his right to counsel, they terminated the interview. Thomas later initiated a telephone call to someone he called "Ma," telling her to contact and direct "'Nita" to: (1) get rid of what was hidden in his "stash spots"; and (2) get Thomas's keys to his Cadillac because there was $2,640 in the glove compartment. Detective Rietzler used the recording of this call to obtain a search warrant. Officers searched the Cadillac five days later, on December 15, and found not only the cash but also documents linking Thomas to a phone number from which heroin-related calls had been intercepted. Later, Anita Andrews admitted to agents that she had destroyed two $50 bags of heroin.

OPINION

Pursuant to 28 U.S.C. § 636(b)(1), the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Because the resolution of a motion to suppress is a fact-specific inquiry, however, the court gives deference to the credibility determinations made by Judge Crocker, who had the opportunity to listen to testimony and observe the witnesses at the suppression hearing. *United States v. Hendrix*, 509 F.3d 362, 373 (7th Cir. 2007). Additionally, while connected to his case as a whole, the court notes that much of Thomas's January 15 letter raises issues that are unrelated to the issues addressed in the R&R. Some of those issues, such as Thomas's request for a fifth attorney, have already been addressed. Others, such as the placement of a GPS device on his uncle's vehicle and purportedly illegal wiretapping, are no longer material to a trial of Thomas's case, either because they have been decided on the

merits or determined to be frivolous, although they are preserved for a possible appeal. In any event, the court will limit its analysis in this opinion to the issues raised in the suppression motion, the findings of fact and legal conclusions in the R&R, and any challenges Thomas raises that are directly related to those facts and conclusions.

**I. The State Probation Warrant**

Judge Crocker found that Detective Rietzler did not use Tomaszewski as a "stalking horse" in order to use a probation warrant to evade the Fourth Amendment. Specifically, he found that: (1) the warrant *was* in the system when Thomas was arrested; and (2) there was no persuasive evidence indicating the drug task force intervened to obtain such a warrant. Thomas objects to this conclusion, arguing that the police placed him on a parole hold only because there was no probable cause to indict him at the time. (Letter (dkt. #137) 18.) As with many of his other objections, Thomas can point to no evidence that this is the case. Furthermore, Judge Crocker found credible Detective Rietzler's testimony that no one on the task force was involved in placing the probation warrant on Thomas, and the court owes deference to that finding. *Hendrix*, 509 F.3d at 373. Although the lack of information regarding the warrant's origins is admittedly puzzling, the court is inclined to adopt Judge Crocker's findings and analysis on this point.

Even if this court had a basis to conclude otherwise -- that Detective Rietzler intervened to request the issuance of the probation warrant -- Judge Crocker further found that Thomas's M.O. and the circumstances of the traffic stop were independently sufficient to establish the necessary reasonable suspicion to justify the probation hold. *See United States v. Meece*, 580 F.3d 616, 618-19 (7th Cir. 2009) (defendant serving a term of

supervised release "could be detained upon a reasonable suspicion that he had committed, or was about to commit, a crime or violation of the terms of his supervised release"); *State v. Goodrum*, 152 Wis. 2d 540, 545-46, 449 N.W.2d 41 (Ct. App. 1989) ("A probationer may be taken into custody and detained for an investigation of an alleged violation. However, the fourth Amendment requires that searches and seizures be reasonable.") (internal citation omitted). The court agrees and adopts the analysis of the R&R on this point as well. As recommended by the R&R, in light of the above, the court need not reach the question of whether the government was entitled to rely on the warrant in good faith.[5]

## II. Attenuation

Even if Thomas *had* been arrested illegally, Judge Crocker found that the incriminating phone call Thomas made was legally attenuated from the arrest. *See United States v. Reed*, 349 F.3d 457, 463 (7th Cir. 2003). Specifically, there were intervening events between his detention and the phone call -- Porcha Bell's confession, her implication of Thomas that confirmed his MO and the surrender of the heroin -- that provided probable cause for continued custody.[6] Furthermore, the phone call was not the product of anything the police did. In fact, before making his call, Thomas invoked his right to counsel and the interview ended. Accordingly, Judge Crocker found Thomas's decision to call "Ma" to

---

[5] Judge Crocker also found in the R&R that even without the probation warrant, the officers would likely have gathered enough evidence (by means of Porcha Bell's confession to body-smuggling heroin) to arrest Thomas while he was still on the scene, since he did not have a valid driver's license. Whether or not the record confirms with any confidence that Thomas would have voluntarily remained on the scene until Bell confessed, the court at least finds it to be a near certainty that the officers had a good faith basis for holding Thomas in custody under all the circumstances long enough to obtain Bell's confession, with or without the probation warrant.

[6] In his letter, Thomas objects that Detective Rietzler coerced Porcha Bell into confessing. This was not raised in the original motion to suppress and so provides no basis to challenge the R&R's findings.

attempt to effect the concealment of drugs and money was not prompted by anything the police said or did, rendering suppression inappropriate. The court agrees and adopts the analysis and conclusion of the R&R on this point.

**III.  Search of the Residence**

The R&R next rejects any argument that Anita Andrews's consent for law enforcement to search the residence she shared with Thomas was involuntary. Most conspicuously, Thomas offers no affidavit or testimony to support a claim that Andrews did not voluntarily consent. The only evidence before the court on this point -- Detective Rietzler's written report and the recorded conversation with Andrews -- indicates that consent was voluntary. On this record, Judge Crocker found that the claim failed for lack of prima facie support.

Furthermore, Judge Crocker noted that the primary basis for the allegations of coercion was the agents' repeated requests for a warrant. "Police may not threaten to obtain a search warrant when there are no grounds for a valid warrant, but '[w]hen the expressed intention to obtain a warrant is genuine . . . and not merely a pretext to induce submission, it does not vitiate consent.'" *United States v. Evans*, 27 F.3d 1219, 1231 (7th Cir. 1994) (quoting *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992)) (alterations in original). Here, Judge Crocker found that given what the task force agents already knew, they had sufficient information to obtain a valid warrant. For this reason, he recommended denying the motion to suppress on those grounds as well.

While Thomas still objects, arguing that Andrews' consent was coerced by virtue of threats to take away her children, his failure to produce any evidence on that point

9

undermines the objection.[7] In the absence of any evidence of such a threat, the court overrules the objection and will adopt the analysis and conclusion in the R&R.

## IV. Search of the Cadillac

Finally, Judge Crocker concluded in the R&R that there is no basis to suppress the evidence discovered in the impounded Cadillac. First, he pointed out that because there is no basis to suppress any of the evidence that supported the search warrant application, there is likewise no basis to excise it from the warrant application under *Franks v. Delaware*, 438 U.S. 154 (1978). Second, Judge Crocker responded to Thomas's argument that the five-day delay between impounding the Cadillac and obtaining the search warrant violated the Fourth Amendment, referring to the government's unrebutted argument balancing the government's strong interest in seizing and searching the Cadillac in light of Thomas's incriminating phone call against the "minimal" delay and lack of any resulting prejudice. (*See* Pl.'s Br. Opp'n (dkt. #117) 16-20.)

While Thomas again objects that the initial seizure and removal of the car was performed without a warrant (Letter (dkt. #137) 19), the court sees no error in Judge Crocker's adoption of the government's reliance on the "automobile exception." The automobile exception permits a warrantless search and seizure of a car so long as it is

---

[7] Thomas refers to a CD recording that purportedly includes these threats. After reviewing the recordings, the court can discern no such threat, explicit or implicit, in the conversation that law enforcement had with Anita Andrews. (*See* dkt. #50-2.) The only reference in the pre-search conversation to Andrews's children, besides a statement early in the interview that they did not want to wake up her son, occurs about 6:25 into the recording, when Detective Rietzler states, "Anita. We're not interested in charging you. We're looking for your cooperation. You have a six-year-old son, or an eight-year-old son, and you've got an - another older daughter, I believe. Okay. So you really – I don't think he's worth it." Some of the interview is very difficult to hear, but after listening twice to the pre-search material, the court can discern no further references to Andrews's children. Even Thomas's motion to suppress only cites to a statement in the *second* interview with Andrews, which took place after the consent search was over, as evidence of coercion. (*See* Mot. Suppress (dkt. #50) 6.)

justified by probable cause. *See United States v. Rivera*, 825 F.2d 152, 158 (7th Cir. 1987) (citing *California v. Carney*, 471 U.S. 386 (1985); *Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. United States*, 267 U.S. 132 (1925)). In this case, the court agrees with the government that probable cause stemmed from the phone call Thomas made from the jail, rendering the seizure of the Cadillac reasonable under the Fourth Amendment.[8]

With respect to the five-day delay between seizure and search, Thomas has not challenged the balancing analysis performed by the government and adopted by Judge Crocker in the R&R. Accordingly, the court adopts the recommendation of the R&R and will deny this final portion of the motion to suppress substantially for the reasons articulated by the government.

ORDER

IT IS ORDERED that:

1) The Report and Recommendation (dkt. #129) is ADOPTED as set forth above; and

2) Defendant Melvin Thomas's motion to suppress (dkt. #50) is DENIED.

Entered this 20th day of February, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[8] Thomas also appears to argue that the phone call he made was not, in fact, incriminating because he told his mother that *her* money was in the car, not his. The only evidence in the record with respect to the content of the phone call is Detective Rietzler's report, which does not support Thomas's characterization. (*See* Ex. Police Reports (dkt. #50-1) 0123-24.) Regardless of Thomas's characterization of the call, the court agrees with Judge Crocker's conclusion that the phone call was sufficiently suspicious to justify the search and seizure of the Cadillac.